UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Catherine Dahlberg,                                  Case No. 18-cv-2244 (TNL)

          Plaintiff,

v.                                                                    **ORDER**

Language Access Network, LLC,

          Defendant.

---

Catherine Dahlberg, Unit Number, 2019141, P.O. Box 7327, Tallahassee, FL 32314 (*pro se* Plaintiff); and

William H. Prophater, Jr., Newhouse, Prophater, Kolman, and Hogan, LLC, 3366 Riverside Drive, Suite 103, Columbus, OH, 43221 and Christopher L. Lynch and Timothy Y. Wong, Barnes and Thornburg, LLC 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402 (for Defendant).

---

This matter comes before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion for Summary Judgment. (ECF No. 78). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 43). The Court has reviewed and considered all papers filed in connection with the motion. Based on the filings, record, and pleadings in this matter, the Court will grant the motion.

**I.   PROCEDURAL HISTORY**

Plaintiff Catherine Dahlberg filed suit on July 31, 2018. (ECF No. 1). She amended her complaint on September 20, 2018. (ECF No. 9). Dahlberg alleges that Defendant Language Access Network, LLC ("LAN") terminated her employment, failed to promote her, treated her differently, retaliated against her, and harassed her on the basis of her race,

national origin, and color. LAN answered the complaint (ECF No. 18) and moved for summary judgment on June 5, 2020. (ECF No. 78). LAN argues that there is no material fact in dispute and that it is entitled to judgment as a matter of law. Dahlberg did not respond to the motion for summary judgment.[1]

## II.   MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Under Rule 56(a), courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) ("The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a

---

[1] Dahlberg has since sent multiple emails to the Court and contacted the undersigned's chambers by telephone, seeking a status update to her case. (ECF Nos. 87, 88 and 89). She also indicated that she has had trouble receiving documents at her current address. It is not clear from Dahlberg's correspondence what, if any relief she seeks. Regardless, Dahlberg has never filed a proper motion for relief, as required by the District's Local Rules and the Federal Rules of Civil Procedure. The Court has repeatedly taken steps to ensure that it and LAN has her proper address. (ECF Nos. 52 and 54). It is Dahlberg's responsibility to ensure the Court and other parties have the ability to reach her should her address change. In addition, LAN sent a courtesy copy of its summary judgment motion to Dahlberg by email. (ECF No. 83). Under the circumstances, the Court concludes that it is appropriate to proceed with this motion, notwithstanding the deference afforded Dahlberg because of her pro se status.

genuine issue for trial.'") (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). In considering such a motion, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotation and citation omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *Torgerson*, 643 F.2d at 1043.

**B. Facts**

Dahlberg is of Chinese national origin. (ECF No. 81-1, p. 5). She previously worked as a Chinese interpreter for LAN, a company that provides video interpreting services in the medical field. (*Id.*, p. 6). Dahlberg began working for LAN in June 2017. (ECF No. 81-2, p. 2). Because Dahlberg had access to confidential medical information, she was required to adhere to certain protocols that LAN enacted to protect that information. (ECF No. 81-1, p. 6-7). Dahlberg received training on these protocols when she started working for LAN. (*Id.*).

Dahlberg was responsible for providing "smooth communication between Health Care Provider(s) and LEP Patient[s] by providing accurate, culturally sensitive interpretation of all information." (ECF No. 81-3, p. 2). She was required to maintain professionalism, work effectively in a team environment, and provide good customer

service. (*Id.*). Dahlberg worked at LAN's Minneapolis office, where she was the only Chinese interpreter. (ECF No. 81-1, p. 14). She often interacted with LAN's other Chinese interpreters, who worked at other LAN locations throughout the country. (*Id.*).

A few months after Dahlberg began working at LAN, other interpreters began to voice concerns about her performance. (*Id.*, p. 13, 19). Among other things, employees of LAN's Chinese interpreter group stated that Dahlberg repeatedly sent calls back to queue, causing the workload of her colleagues to increase. (*Id.*; Ex. 81-4, p. 2). Dahlberg went through these complaints with her manager in her performance review. (ECF No. 81-1, p. 19). Dahlberg admitted these concerns were unrelated to her race or national origin. (Ex. 81-1, p. 17).

In November 2017, Dahlberg received a verbal warning because of multiple instances where she arrived late to work and took long breaks. (ECF No. 81-7, p. 2). She refused to sign the form documenting the warning but admitted to receiving it in her deposition. (*Id.*; ECF No. 81-1, p. 22). She also signed a counseling statement in which she indicated that she often missed calls or transferred them back to the queue so she did not have to pick them up. (ECF No. 81-6).

A few days after receiving the verbal warning, Dahlberg reported that another employee acted in a way that made Dahlberg fear for her personal safety. (ECF No. 81-8, pp. 5-6). LAN management investigated the incident and required additional training of the entire staff as a result. (*Id.*; ECF No. 81-1, p. 27). Dahlberg's written complaint regarding her co-worker did not accuse any LAN employee of race discrimination, though she testified in her deposition that she made a verbal complaint. (ECF No. 81-1, p. 29).

4

A few weeks later, Dahlberg told a cleaning person to enter an office while another interpreter was on a call, thus causing the confidentiality of the call to be breached. (*Id*. p. 32-33). Dahlberg did not know the other interpreter was on a call at the time. (*Id*., p. 33). She indicated, however, that she "regret[ted] that this happened;" that she understood that she would face some discipline; and that she was concerned for her job. (*Id*., pp. 34, 39). She again acknowledged that this dispute had nothing to do with her race. (*Id*., p. 36).

LAN fired Dahlberg on December 4, 2017 for insubordination, harassing conduct, and failure to cooperate in a company investigation. (ECF No. 81-11, p. 2). Dahlberg admitted to the same in her deposition. (ECF No. 81-1, p. 37). Dahlberg did not claim any form of discrimination in her termination meeting with a LAN executive. (*Id*., p. 38).

During her employment, Dahlberg kept contemporaneous notes of her time as a LAN employee. (ECF No. 81-12). In her deposition, she admitted that she never mentioned any incident of race discrimination in those notes. (ECF No. 81-1, p. 28). She indicated, however, that she felt her managers had "unfavorable opinions about [the] Chinese team," though she was unable to identify any specific statements her managers made regarding her or her co-workers' work. (ECF No. 81-1, p. 9). She stated, however, that she was assigned to work in a room with members of other language groups, though she acknowledged being the only Chinese interpreter at her office and that members of the Chinese interpreter group had a higher workload than other groups. (ECF No. 81-1, p. 9). Dahlberg later filed a complaint with the Equal Opportunity Employment Commission and received a right-to-sue letter.

5

### C. Analysis

Dahlberg seeks relief under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discharging or otherwise discriminating against any individual on the basis of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits an employer from harassing an individual on the basis of a protected characteristic. *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005).

To survive a motion for summary judgment, Dahlberg must provide direct evidence of discrimination, which is evidence that shows a "specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir. 1997). If she cannot do so, then she must establish that the evidence shows an "inference of unlawful discrimination." *Griffith v. City of Des Moines*, 387 F.3d 733,736 (8th Cir. 2004). Such an inference requires that Dahlberg first demonstrate proof of a prima facie case of discrimination. *Id*. To do so, Dahlberg must show: (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1019 (8th Cir. 2011).

If Dahlberg establishes a prima facie case of discrimination, then the burden shifts to LAN to "articulate a legitimate, non-discriminatory reason" for its act. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (citation omitted). "[T]he ultimate

burden [then] falls on [Dahlberg] to produce evidence sufficient to create a genuine issue of material fact regarding whether [LAN's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* (citation omitted). "Proof of pretext, coupled with a strong prima facie case, may suffice to create a triable question of fact." *Id.*

Dahlberg has not responded to LAN's motion for summary judgment. On the record before the Court, there is nothing to suggest direct evidence of discrimination. Nor does the record establish a prima facie case of discrimination. A prima facie case of discrimination requires Dahlberg to first identify individuals who were similarly situated, meaning they "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). She must then show those employees were treated more favorably than her. *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004). Here, Dahlberg suggests at most that her supervisor had unfavorable opinions about the Chinese translation team; that her work load was higher than translators for other languages; that she did not want to share an office with a person who was not a Chinese translator; and that her co-workers made inappropriate comments about her. These assertions are insufficient to survive summary judgment for at least two reasons.

First, Dahlberg did not offer any proof or documentation to support her claims, such as time sheets or records that show the hours she worked versus the hours that other translators for other groups worked, or that showed translators for other languages had their own offices. Nor did she provide any detail or example to substantiate her opinion that her

7

supervisor had unfavorable opinions about the Chinese translation team or that the inappropriate comments that her coworker made related to her race or national origin. Dahlberg must substantiate her allegations "with more than speculation, conjecture, or fantasy" to survive summary judgment. *Id*. (citation and internal quotation marks omitted). She has not done so here.

Second, to the extent Dahlberg alleges that LAN terminated her on the basis of her race or national origin, she has offered no evidence to show that other similarly situated individuals, with a similar disciplinary history, were treated more favorably than her. She did not identify a single employee who was treated differently after committing the same or similar violations as her. Nor did she offer evidence to show that other coworkers were the subject of similar complaints as her and allowed to retain their job. Because Dahlberg fails to establish a prima facie case of employment discrimination, summary judgment is appropriate.

Even if the Court were to assume that Dahlberg did establish a prima facie case of discrimination, the Court would still grant LAN's motion for summary judgment because LAN has met its burden to articulate a legitimate, non-discriminatory reason for its act. *See Torgerson*, 643 F.3d at 1046. As discussed above, Dahlberg was the subject of several complaints from her coworkers, who noted that she dropped calls or transferred them back to the queue so others could handle them. She also was warned about her attendance at work. And finally, perhaps most importantly, Dahlberg caused the confidentiality of a doctor/patient consultation to be breached, a serious breach of protocol for a company that took extensive measures to protect the confidentiality of its calls. *See Aucutt v. Six Flags*

*Over Mid-Am., Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1996) (affirming the employee's inconsistent behavior with the employer's safety policies and negative attitude as a legitimate, nondiscriminatory reason for his termination). Dahlberg admitted repeatedly in her deposition that the discipline that she received was not based on her race or national origin. She does not now identify any evidence in the record to show the explanation for her termination was a pre-text for discrimination. Summary judgment is therefore appropriate for this reason as well.

### III.    ORDER

Based on the foregoing and all of the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 78) is **GRANTED** and the matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: August 19, 2020               *s/ Tony N. Leung*
                                    Tony N. Leung
                                    United States Magistrate Judge
                                    District of Minnesota

                                    *Dahlberg v. Language Access Network, LLC*
                                    Case No. 18-cv-2244 (TNL)